IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Louis Frank Demma, | ) | Civil Action No. 8:13-cv-00277-TMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On February 8, 2011, Plaintiff filed a Title II application for DIB [R. 145–46 ], and a Title XVI application for SSI [R. 147–55], alleging an onset of disability date of February 28, 2006.  These claims were denied initially on June 20, 2011, [R. 88–101, 102–15], and upon

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."

reconsideration on September 23, 2011, [R. 116–17, 118–19], by the Social Security Administration ("the Administration"). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and on August 1, 2012, ALJ Ivar E. Avots conducted a de novo hearing on Plaintiff's claims. [R. 36–80.]

The ALJ issued a decision on September 6, 2012, finding that Plaintiff was not disabled. [R. 8–35.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through September 30, 2010, and had not engaged in substantial gainful activity since February 28, 2006, the alleged onset date. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: compression deformities, degenerative disc, and degenerative joint disease of the thoracic and lumbar spine; osteoarthritis; mood disorder; borderline intellectual functioning; pain disorder; and alcohol abuse disorder. [R. 14, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of a history of dyslexia, chest pain, soft tissue injuries, wound infection, hypertension, leukocytosis, hepatitis, and anxiety, and they have been controlled with medication and/or other conservative measures. [R.15.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 15, Finding 4; R. 18, Finding 12.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff, based on all of his impairments, including his substance use disorder, retained

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with certain additional limitations. Specifically, the claimant is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. The claimant is capable of sitting, standing, and walking for 6 hours each out of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently perform all other postural activities. The claimant must avoid all exposure to hazards, such as unprotected heights and dangerous machinery. The claimant can concentrate, persist, and work at pace sufficient for the performance of simple, routine, repetitive tasks involving one and two step instructions for extended periods of 2 hours each during an 8-hour day. The claimant can interact casually and less than occasionally (5 to 10 % of the workday) with the public. The claimant could not sustain work throughout a typical workday due to his symptoms. The claimant could not relate appropriately with coworkers on an 8-hour-a-day, 40-hour-a-week basis.

[R. 15–16, Finding 5.]  If Plaintiff stopped the substance use, the ALJ determined Plaintiff

would have the residual functional capacity to perform medium work as defined in 20 CFR 404. 1567(c) and 416.967(c) with certain additional limitations. Specifically, the claimant would be capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. The claimant would be capable of sitting, standing, and walking for 6 hours each out of an 8-hour workday. The claimant could never climb ladders, ropes, or scaffolds. The claimant could frequently perform all other postural activities. The claimant would have to avoid all exposure to hazards, such as unprotected heights and dangerous machinery.  The claimant could concentrate, persist, and work at pace sufficient for the performance of simple, routine, repetitive tasks involving one and two-step instructions for extended periods of 2 hours each during an 8-hour day. The claimant could interact casually and less than occasionally (5 to 10 % of the workday) with the public. The claimant could interact appropriately with coworkers and supervisors in a stable, routine setting.

[R. 20–21, Finding 13.]

3

Based on the residual functional capacity ("RFC") findings, at Step 4, the ALJ determined Plaintiff is unable to perform his past relevant work even if he were to stop the substance use.  [R. 17, Finding 6; R. 29, Finding 14.]  Considering the Plaintiff's age, education, work experience, and RFC based on all of the impairments, including the substance use disorder, the ALJ found that there are no jobs that exist in significant numbers in the national economy that the claimant can perform.  [R. 17, Finding 10.] However, if Plaintiff ceased the substance use, the ALJ found that, considering the Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform.  [R. 29, Finding 16.] The ALJ found that the substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use.  [R. 30, Finding 17.]  Consequently, the ALJ concluded that, because the substance use disorder is a contributing factor material to the determination of disability, the Plaintiff has not been disabled within the meaning of the Act at any time from the alleged onset date through the date of the decision.  [*Id.*]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined review.  [R. 1–4.] Plaintiff filed this action for judicial review on January 30, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and should be reversed and remanded because the ALJ erred in dismissing Dr. Amir Agha's (Dr. Agha's) report as inconsistent with the longitudinal record and dismissing his opinion that Plaintiff could not work given his present situation and by finding that Plaintiff's

4

conditions are caused by alcoholism when there is no such evidence in the record. [Doc. 12 at 10–13.] The Commissioner, on the other hand, contends the ALJ properly weighed the medical opinion evidence and properly determined that Plaintiff would not have been disabled but for his alcoholism. [Doc. 13 at 16–21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result

5

as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).   To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See,*

6

e.g., *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of*

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

10

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

12

prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

13

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because

14

"it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

15

the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medical Opinion Evidence and Materiality of Substance Abuse**

As noted above, Plaintiff contends the ALJ's decision is not supported by substantial evidence because the ALJ erred in dismissing Dr. Agha's report as inconsistent with the longitudinal record and dismissing his opinion that Plaintiff could not work given his present situation.  Plaintiff further argues that the ALJ erred by finding that Plaintiff's conditions are caused by alcoholism when there is no such evidence in the record.  The Commissioner argues the ALJ properly weighed the medical opinion evidence and properly determined

that Plaintiff would not have been disabled but for his alcoholism. The Court agrees with the Commissioner.

### *Brief Medical History*

Plaintiff was in a motorcycle accident on February 28, 2006, resulting in mild, wedge-compression deformities in the mid to lower thoracic spine, possibly due to mild, acute fractures. [R. 517.] Over time, his lower back pain increased, as well as his right shoulder pain and some pain and stiffness in his right knee. [R. 515.] Plaintiff saw Dr. Carol W. Burnette ("Dr. Burnette") on March 2, 2007, for an examination of his thoracic and lumbar spine. [R. 300.] On neurologic exam, Dr. Burnette noted Plaintiff's exam appeared grossly nonfocal with preserved light touch and pinprick sensation in all extremities; no focal motor weakness appreciated; muscle stretch reflexes symmetrically decreased in all extremities; and no long tract signs present. [*Id.*] Dr. Burnette recommended Plaintiff avoid repetitive bending or heavy lifting and recommended he quit smoking and drinking. [R. 301.] Dr. Burnette did not feel comfortable prescribing any sort of narcotic mediation for him on a chronic basis. [*Id.*]

On April 13, 2011, Plaintiff was evaluated by Robin Moody, Ph.D. ("Dr. Moody") as a result of his applying for disability due to back and left foot pain and mental problems. [R. 325.] Dr. Moody noted Plaintiff endorsed symptoms of depression and panic disorder and also admitted to suicidal ideations but denied intent or plan. [*Id.*] Dr. Moody noted Plaintiff reported arrests for possession of marijuana, minor possession of alcohol, lewd lascivious molestation of a child, and serving approximately three (3) months in prison. [R. 326.] Plaintiff reported drinking alcohol every day, including at least a dozen beers and six shots of liquor. [*Id.*] Dr. Moody diagnosed Plaintiff with substance induced mood disorder

19

with depressive features, alcohol dependence, physical abuse of a child (victim) and sexual abuse of a child (victim). [R. 327.] Dr. Moody also diagnosed R/O borderline intellectual functioning and assigned a GAF score of 51. [*Id.*]

On June 7, 2011, at the request of the State agency, Dr. Joyce Broadus Lewis ("Dr. Lewis"), Jeff Shramek, M.D. ("Dr. Shramek") performed a three view MRI of Plaintiff's lumbar spine noting no acute lumbar fracture and chronic changes of the superior and inferior L1 body. [R. 330.] Also on June 7, 2011, Plaintiff saw Dr. Agha of Foothills Rheumatology, P.A., for a consultative evaluation at the request of the State agency. [R. 331–34.] In his evaluation, Dr. Agha found Plaintiff had normal function in his left and right hands, including but not limited to grip strength and fine and gross manipulation. [R. 331.] Dr. Agha noted abnormal findings in Plaintiff's ability to heel/toe walk, squat, and noted gait disturbance. [*Id.*] On the orthopaedic exam, Dr. Agha noted normal range of motion findings with respect to the cervical spine, lumbar spine, shoulder, elbow, wrist, knee, hip, ankle, and straight leg raising. [R. 332.] Dr. Agha diagnosed degenerative disc disease, osteoarthritis, and a history of ETOH (alcohol) abuse with DTs (withdrawal symptoms). [R. 334.] Dr. Agha concluded that he feels Plaintiff "will not be able to carry out any kind of job given his present situation. Consumption of alcohol has further compounded the problem." [*Id.*]

On June 13, 2011, Plaintiff was admitted to AnMed Health with delirium tremens (DTs) secondary to alcohol withdrawal. [R. 369.] He had previously been admitted on May 16, 2011, for delirium tremens with chest pain. [*Id.*, R. 383–84.] Plaintiff also presented to the AnMed Health minor care medical center or emergency room on other occasions in August 2011 complaining of low back pain and DTs [R. 402, 406, 447.]

20

On January 26, 2012, Plaintiff presented to Dr. Dennis Chipman ("Dr. Chipman") for an independent medical exam. [R. 494.] Dr. Chipman noted reviewing reports from Dr. Moody, Dr. Agha, and Dr. Burnette. [R. 496.] Dr. Chipman concluded that Plaintiff is chronically depressed with severe insomnia, mood disturbance with crying, and decreased energy level and that it is likely the depressive symptoms have been induced by alcohol abuse with associated chronic pain. [R. 498.] Dr. Chipman opined that Plaintiff would not be able to get through a typical work day, would not be able to relate to co-workers or supervisors in a consistent manner, and that there would likely be an exacerbation of his condition. [*Id.*] Dr. Chipman also noted that he was not a treating psychiatrist. [*Id.*]

### ALJ's Treatment of Dr. Agha's Opinion and Evaluation of Substance Use

In evaluating Dr. Agha's opinion, the ALJ explained as follows:

> In his report, Dr. Agha stated: "I feel he will not be able to carry out any kind of job given his present situation. Consumption of alcohol has further compounded the problem" (7F). I have given this statement some weight, and it is consistent with my findings that the claimant is disabled due to substance abuse. However, I do not accept Dr. Agha's assessment to the extent that it suggests that the claimant's physical impairments would preclude work activity. To that extent, such conclusions are inconsistent with the longitudinal evidence. While the claimant exhibited some abnormalities upon examination by Dr. Agha, including needing support to stand from a seated position, the evidence indicates that some of those abnormalities resulted from intoxication. As discussed, Dr. Agha noted that the claimant's had alcohol on his breath at the time of the exam (7F). Additionally, the claimant's activities, including fishing, unloading tools at a flea market, and providing care for farm animals, demonstrate that his physical impairments would allow medium work on a regular and continuing basis.

[R. 27–28.]

Additionally, with regard to Plaintiff's alcohol use, the ALJ noted certain evidence of it, including: at the hearing, Plaintiff testified he continues to drink alcohol, generally three to four shots of liquor and two to three beers daily; Plaintiff reported to Dr. Burnette he drinks upwards of six to eight beers nightly and usually drinks himself to sleep; Plaintiff told Dr. Moody he drank at least a dozen beers and six shots of liquor daily; and, Plaintiff had been treated several times in hospitals for alcohol detoxification or alcohol abuse. [R. 16.] The ALJ discussed Plaintiff's activities of daily living [R. 23] and determined that, based on what he could do even while using alcohol, if alcohol use was stopped then Plaintiff would be able to perform medium work with certain limitations. [*Id.*; R. 29.] The ALJ also noted that Plaintiff's hospital records, which repeatedly indicated generally normal examinations, support his determination of Plaintiff's ability to perform work. [R. 25.]

### *Discussion*

Plaintiff takes issue with the ALJ's weighing of Dr. Agha's opinion arguing that "[t]he plain reading of the report in English indicates that the doctor felt the claimant was not able to be employed based on his physical condition and in addition, his use of alcohol had made a bad problem worse. However, he was unemployable due to his physical problems which were noted by Dr. Agha." [Doc. 12 at 11.] Plaintiff argues that Dr. Agha's opinion is supported by the opinion of Dr. Burnette and that the ALJ's dismissal of Dr. Agha's opinion is legally insufficient. [*Id.* at 11–12.]

Under section 404.1527(d)(1), every medical opinion, even that of a non-treating or non-examining physician, must be evaluated. A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or

22

mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96–2p.

Furthermore, even if Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. *See Blalock*, 483 F.2d at 775. The Fourth Circuit has said that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record." *Gordon*, 725 F.2d at 235. However, "a non-examining physician can be relied upon when it is consistent with the record." *Id.*

As an initial matter, Dr. Agha performed a consultative evaluation and is not a treating source whose medical opinion may be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Upon review of the record, the Court notes the ALJ expressly discussed Dr. Agha's opinion and explained the weight assigned. The Court notes that, while there is evidence in the record of Plaintiff's physical impairments, there is also evidence in the record supporting the ALJ's finding that Plaintiff's physical impairments do not preclude work. For example, in Dr. Agha's June 7, 2011, evaluation, she specifically noted that Plaintiff had normal function in his left and right hands, including but not limited to grip strength and fine and gross manipulation; and had normal range of motion findings with respect to the cervical spine, lumbar spine, shoulder, elbow, wrist, knee, hip, ankle, and straight leg raising. [R. 331–32.]

The ALJ found Dr. Agha's conclusions, that Plaintiff's physical impairments would preclude work activity, are inconsistent with the longitudinal evidence.  In support of this finding, the ALJ considered the opinion of Dr. Burnette that Plaintiff should avoid repetitive bending or heavy lifting and gave her opinion some weight.  The ALJ explained that the standards used by Dr. Burnette are not relevant to a decision regarding disability but found her conclusions consistent with his findings.  [R. 28.]  The ALJ also considered the opinion of Dr. Moody that Plaintiff "is limited to simple, routine, repetitive tasks" and found Dr. Moody's  conclusion was supported by his examination records, Plaintiff's function reports and Plaintiff's hospital records.  [*Id.*]  Further, the ALJ considered Dr. Chipman's opinion that Plaintiff's impairments produce a moderate to severe level of impairment most of the time; that it is likely that the depressive symptoms have been induced by alcohol abuse; and that Plaintiff would not be able to get through a typical workday.  [*Id.*]  The ALJ gave Dr. Chipman's opinion some weight as they were consistent with his finding that Plaintiff, due to alcohol abuse, is unable to sustain work activity on a regular and continuing, full-time basis.  [*Id.*]

Moreover, Dr. Agha's statement that Plaintiff is unable to carry out any kind of job is not a medical opinion.  Statements that a patient is "disabled," "unable to work," meets a Listing's criteria, or similar statements are not medical opinions; these are opinions on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e).  SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the

claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

The fact that Dr. Agha found Plaintiff unable to carry out any kind of job given his present situation, even in light of the findings on orthopaedic exam, is consistent with the ALJ's finding that, absent the alcohol abuse, Plaintiff would not be disabled. The law provides that a person will "not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a) (precluding an award of disability benefits if alcohol or drug abuse was "a contributing factor material to the Commissioner's determination that the individual is disabled"); *see also Driver v. Colvin*, C/A No. 8:12-3209-JMC-JDA, 2014 WL 1315312, at *18–19 (D.S.C. March 29, 2014) (discussing how the Commissioner determines whether alcoholism is a contributing factor material to the disability determination). The Court notes that the ALJ expressly discussed the evidence regarding Plaintiff's use of alcohol and Plaintiff's physical and mental limitations, and the ALJ explained the reasons why he determined Plaintiff could perform medium work with certain limitations if he stopped drinking. This Court finds that the ALJ "built 'an accurate and logical bridge from the evidence to [his] conclusion.'" *Driver*, 2014 WL 1315312, at *19 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

For all of these reasons, the Court finds the ALJ's evaluation of Dr. Agha's opinion and the ALJ's determination that, absent the alcohol abuse, Plaintiff would not be disabled are supported by substantial evidence.

25

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 30_____, 2014
Greenville, South Carolina